# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIFFANY BUCHANAN,                                    Case No. 1:18-cv-466

        Plaintiff,                                    Dlott, J.
                                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Tiffany N. Buchanan filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff asserts two claims of error. As explained below, I conclude that the ALJ's decision should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I.  Summary of Administrative Record

The decision from which Plaintiff appeals to this Court is the second adverse disability decision against Plaintiff. Plaintiff first sought disability insurance benefits ("DIB") on November 1, 2011, but that application was denied initially and upon reconsideration, after which she sought an evidentiary hearing before an administrative law judge ("ALJ"). (Tr. 149). On March 12, 2013, ALJ Scott Canfield issued a written adverse decision, concluding that Plaintiff was not disabled. (Tr. 122-138). The Appeals Council denied review, leaving the March 2013 decision as final for purposes of administrative res judicata.

Plaintiff filed a new application for benefits on February 6, 2015, alleging the onset of disability beginning March 13, 2013. That DIB application also was denied initially and upon reconsideration, after which Plaintiff requested a new evidentiary hearing. On March 24, 2017, Plaintiff appeared with counsel and gave testimony before ALJ Elizabeth Motta; a vocational expert also testified. (Tr. 83-118). On September 26, 2017, ALJ Motta issued a second unfavorable written decision. (Tr. 61-74). The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

Based upon Plaintiff's earnings record, she was insured for purposes of DIB only through March 31, 2016. Therefore, she must establish that she became disabled prior to that date. Plaintiff was 28 years old on her date last insured ("DLI"), an age that is considered to be a "younger individual." She has a high school education, and past relevant work as an assistant manager, a skilled job that she performed at the light exertional level. (Tr. 72). She lives in a house with her husband of eight years; they have no children. (Tr. 87-88).

The ALJ determined that Plaintiff has severe impairments of: "undifferentiated connective tissue disease; fibromyalgia; lumbar degenerative changes; obesity; headaches; bipolar disorder; and anxiety disorder." (Tr. 63). The ALJ found additional "non-severe" impairments of: "(1) gastro-esophageal reflux disease ("GERD"); (2) heart palpitations, (3) marijuana abuse, (4) nausea-alone, (5) irritable bowel syndrome ("IBS"), and (6) hypothyroidism." (Tr. 64). The ALJ further found "non-medically determinable impairments of 'possible' postural orthostatic tachycardia syndrome ('POTS'), alleged Addison's disease, alleged adrenal insufficiency, alleged Lupus, and alleged colitis." (Tr. 65). In this appeal, Plaintiff does not dispute the ALJ's determination that none of her

impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability throughout the relevant period. (Tr. 66).

ALJ Motta agreed that Plaintiff cannot perform her past work. Consistent with the 2013 decision, ALJ Motta determined that Plaintiff retained the residual functional capacity ("RFC") to perform only a limited range of light work, with minor changes in her 2013 restrictions based upon additional evidence. Thus, the ALJ found that Plaintiff could:

> Lift and carry up to 20 pounds occasionally and 10 pound frequently; sit, stand, and walk each six hours in an eight-hour workday; only occasional postural activities, such as climbing stairs and ramps, balancing, stooping, kneeling, crouching, or crawling; no climbing ropes, ladders, or scaffolds; no exposure to hazards, such as dangerous machinery, at unprotected heights, or driving as part of job duties; no concentrated exposure to vibration; no concentrated exposure to extremes of heat, cold, wetness, or humidity; no concentrated exposure to dusts, fumes, odors, gases, or poorly ventilated areas; limited to simple, repetitive tasks; limited to low stress work with no strict production quotas or fast pace and only routine work with few changes in the work setting and limited to occasional contact with the public, coworkers, and supervisors.

(Tr. 68-69; *compare with* Tr. 132 (2013 RFC determination)).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy through her DLI, including the representative jobs of office helper, mail clerk, and photocopy machine operator. (Tr. 73). Therefore, the ALJ determined that Plaintiff was not under a disability.

In her judicial appeal, Plaintiff asserts that the ALJ erred: (1) by failing to identify additional "severe" impairments and/or by considering her combination of severe and non-severe impairments in determining her RFC; and (2) by improperly assessing her subjective complaints. The undersigned finds no reversible error.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. Alleged Error at Step 2: Determination of Severe Impairments**

In her first claim, Plaintiff argues that the ALJ erred at Step 2 of the sequential analysis, by failing to find her heart palpitations, IBS, GERD, Lupus, Addison's disease/adrenal insufficiency, and POTS to be additional "severe" impairments. Instead, the ALJ found her heart palpitations, IBS, and GERD to be "non-severe," and found Lupus, Addison's disease/adrenal insufficiency and POTS to be "non-medically determinable impairments." (Tr. 64-65).

It is well established that the mere existence of an impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Com'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) (internal citation omitted). That is because a "mere diagnosis…says nothing about the severity of a condition." *Higgs v. Bowen,* 880 F. 2d 860, 863 (6th Cir. 1988)). In addition, "[t]he ALJ need not find credible a claimant's subjective complaints or medical assessments not supported by the medical evidence or the record as a whole." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001). "When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, [the Sixth Circuit Court of Appeals] has regularly found substantial evidence to support a finding of no severe impairment." *Id.* (collecting cases).

Even more importantly given the record presented, so long as an ALJ finds a claimant has at least one severe impairment at Step 2 and proceeds to the next steps of the sequential analysis, the "question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Com'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003); *see also generally Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). This is because the regulations require that if one "severe" impairment exists, all impairments - severe or otherwise - must be considered in the remaining steps of the sequential analysis. Here, the ALJ explicitly acknowledged that she was required to consider and address all of Plaintiff's severe and non-severe impairments in determining the RFC. (Tr. 62; *see also* Tr. 68, finding limitations based on "combination of all impairments," and Tr. 69, noting assessment based on "combined effects of all…medically determinable impairments.").

In her appeal to this Court, Plaintiff fails to show that any of the alleged impairments would impact her RFC in any manner not already accommodated by the ALJ in this case. Therefore, any error was harmless. However, the undersigned also finds that substantial evidence supports the ALJ's differentiation between "severe" and "non-severe" impairments, as well as the determination of non-medically determinable diagnoses.

### a. Heart palpitations

The ALJ determined that Plaintiff's heart palpitations were "non-severe" because they did not have more than a minimal effect on her ability to perform work activities and/or were not expected to result in death or last at least one year. (Tr. 63). In making this Step 2 determination, the ALJ reasoned as follows:

> The claimant has heart palpitations, and takes atenolol to reduce the sensation of heart skips and beats… The claimant reported her palpitations improved with atenolol, however, she still has them on occasion…. The claimant has reported tachycardia; however, she consistently denies syncope…. The claimant's chest pain improved with gabapentin…. Objective tilt-table testing that is designed to induce syncope failed to induce syncope…the testing was stopped prematurely…but what was performed showed only normal finding. *The record does not indicate the claimant has significant work-related functional limitations caused by her benign palpitations….* However, the claimant has also smoked marijuana in non-compliance with her physician advice… Marijuana causes ventricular fibrillation, heart skips, tachycardia, palpitations, and abnormal heart rhythms.

(Tr. 64) (emphasis added).

Plaintiff relies heavily on records generated from her self-referral to the Cleveland Clinic on November 17, 2014, which the ALJ observed was "just prior to filing her [second] application for benefits." (Tr. 65). At that visit, Plaintiff sought consultation for "multiple problems," and requested further referrals and work-up for many self-reported diagnoses, including heart palpitations and syncope. Plaintiff argues that during her initial visit, she and her husband reported multiple episodes of syncope. (Tr. 602-603). However, "a

doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence." *Mitchell v. Com'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009); *see also Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir.1990) (holding that a doctor's report that merely repeats a patient's assertions about her level of pain and symptoms is not objective medical evidence). Plaintiff further complains that the ALJ did not discuss "the details of this specialist evaluation." (Doc. 8 at 4). But an ALJ is "not required to analyze the relevance of each piece of evidence individually." *Bailey v. Com'r of Soc. Sec.*, 413 Fed. Appx. 853, 855 (6th Cir. 2011) (citing 20 C.F.R. § 404.953).

In any event, the referenced clinical record reflects that Plaintiff reported a history of only four episodes since the age of 19, (Tr. 602), while indicating she "doesn't quite remember the details." (Tr. 604). Notwithstanding her husband's report of additional symptoms, the ALJ's statement that Plaintiff "consistently denies" syncope is substantially supported by the record as a whole. (*See, e.g.*, Tr. 451 and 534 (denial in October 2013); Tr. 510 (January 2015); Tr. 641 (November 2014 tilt test); Tr. 801 (May 2015); Tr. 857 (January 2016)). The ALJ's references to tilt table testing results and improvement of her symptoms with medication are also well supported. (Tr. 444, 541, 579; *see also* Tr. 66).

Plaintiff complains that the ALJ erred by implying, without reference to the record, that her marijuana use may have caused or exacerbated her palpitations. (Tr. 64). She points to an office note dated 1/22/13 stating her "last" reported use of cannabis was the previous week (Tr. 670), but concedes that she actually did not discontinue use until following her visit to her primary care physician in February 2015. (Doc. 8 at 3-4). Other records reflect that Plaintiff had been advised to give up marijuana but felt she could not in February 2015, and mentioned continued use at an ER visit on March 24, 2015. (Tr.

64, 553, 777).  Still, the undersigned agrees that any causal connection between Plaintiff's marijuana use and Plaintiff's reported heart palpitations implied by the ALJ in this case was in error, because such medical judgments may not be made in the absence of evidentiary support.  Nevertheless, this minor error was harmless because there was no error in the ALJ's assessment of Plaintiff's heart palpitations as "non-severe."  Plaintiff does not dispute that her condition improved with medication, and none of Plaintiff's physicians, including those at the Cleveland Clinic, ever opined that either Plaintiff's heart palpitations or alleged syncope would limit her ability to work in any way.  *See Ealy v. Com'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

### b.  IBS and GERD

Next, Plaintiff argues that her IBS and GERD were severe impairments.  The ALJ acknowledged that Plaintiff had taken medications for some period of time, but further stated that "the record does not reveal significant treatment for IBS and it does not demonstrate that the claimant has significant work-related functional limitations related to IBS."  (Tr. 64; *see also* Tr. 483, 884).  With respect to GERD, the ALJ similarly found no more than minimal impact on Plaintiff's functional abilities:

> The claimant takes protonix for her GERD, which [she] indicated works better for her than over-the-counter Zantac… Since the claimant switched her medications, there are very few reports or complaints of GERD in the record.

(*Id.*)

Plaintiff cites her intake consultation at the Cleveland Clinic and referral for a specialist consultation with gastroenterology as evidence of "significant treatment."  (Doc. 8 at 6, citing Tr. 598-600).  Again, however, Plaintiff confuses a diagnosis or referral to a specialist for work-up – neither of which have any bearing on the degree of functional limitations – with the Step 2 criteria for differentiating between severe and non-severe

impairments. Based on the record presented, the undersigned finds no error in the ALJ's Step 2 determination.

### c. Lupus, POTS and Adrenal Insufficiency

Plaintiff is also critical of the ALJ's determination that her alleged Lupus, Addison's disease/adrenal insufficiency, and possible postural orthostatic tachycardia syndrome ("POTS") were all "non-medically determinable impairments." (Tr. 65). The ALJ reasoned that records showed that Plaintiff "presented to different providers and subjectively reported diseases that she does not have or that have not been confirmed." (Tr. 65). Plaintiff argues that the ALJ improperly implied the referenced conditions did not exist, despite her self-referral to "for multiple problems" to the Cleveland Clinic. (Tr. 598). At her initial consultation there, Plaintiff reported she had been diagnosed with Lupus and POTS. (Tr. 598). However, no objective records support Plaintiff's subjectively reported history. The one-time examining consultant referred Plaintiff for further evaluation to multiple specialists for consultations concerning her alleged Lupus and POTS, as well as for a consultation with endocrinology for possible adrenal insufficiency, (Tr. 600), but those referrals do not demonstrate that the referenced conditions were medically determinable impairments.

I find no error in the ALJ's finding that neither Lupus or POTS were MDIs, and no reversible error concerning Plaintiff's adrenal insufficiency. A medically determinable impairment ("MDI") under the regulations "must result from an anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques." (Tr. 65); 20 C.F.R. § 404.1521. An MDI must be established by medical evidence comprised of signs, symptoms and laboratory findings, and not solely by a claimant's subjective statements or report. *Id.*; *see also* 20 C.F.R. §

404.929; SSR 96-3p, 96-4p. Thus, Plaintiff's self-referral to the Cleveland Clinic for diagnostic work-ups is insufficient to show error. As the ALJ stated, no matter "how many symptoms an individual alleges, or how genuine the reports may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities (SSR 96-4p)." (Tr. 65). In addition, it remains the Plaintiff's burden at Step 2 to show that an alleged impairment affects her more than minimally and should be considered to be a medically determinable impairment that falls within the "severe" category. *See Watters v. Com'r of Soc. Sec.*, 2013 WL 3722099 at *2 (6th Cir. July 17, 2013). Plaintiff failed to meet that burden.

With respect to Lupus, Plaintiff admits to the record being "somewhat inconclusive," but claims to have established the presence of *some* form of mixed connective tissue disease based upon her October 11, 2013 elevated ANA test, regardless of whether the diagnosis is Lupus. (Tr. 457). However, the ALJ actually included both "undifferentiated connective tissue disease" and "fibromyalgia" among her list of "severe" impairments.

In support of her argument that the failure to include Lupus requires remand, she points to records that reflect she is under the care of a rheumatologist and has been prescribed Methotrexate and Plaquenil. (Tr. 918-924). But those records do not show a clear Lupus diagnosis. In fact, despite a November 2014 blood test being "mildly" elevated, none of the records (other than Plaintiff's subjective reports) reflect a Lupus diagnosis, in part because further analysis "did not reveal other evidence for autoimmune disease and the DNA DS antibody level did not reveal any signs of Lupus activity." (Tr. 65, 583; *see also* Tr. 905, negative ANA test dated April 2016). Other blood tests for Lupus found normal sedimentation rate and C reactive protein. (Tr. 583). As the ALJ

noted, Plaintiff inaccurately reported she was taking medication for Lupus, and/or that she had been diagnosed with that condition. (Tr. 770, 815, 877). Additionally, she "requested steroids for her Lupus, a disease that she …does not have." (Tr. 904). More significant than her admittedly "inconclusive" diagnosis, though, is the fact that no physician has found any limitations relating to Lupus that were not already considered by the ALJ in her review of Plaintiff's symptoms from her other severe impairments, including her connective tissue disease and fibromyalgia.

Plaintiff's argument that the ALJ should have found POTS to be a severe condition is equally unpersuasive. Plaintiff admits that she has no "definitive diagnosis" of POTS; she relies instead on her own self-reported symptoms, as well as her statement that she had been "told" by an unspecified physician that she has POTS. (Tr. 598-600). Plaintiff complains that the ALJ overly relied upon a 2014 tilt test which Plaintiff argues "is not definitive." However, the ALJ reasonably relied on the evidence in the record as a whole, including the lack of a diagnosis and the normal findings on the interrupted tilt test. (Tr. 66, 579). Plaintiff's argument that the ALJ should have credited her testimony and statements regarding her alleged POTS-like symptoms, on which she relies to assert disabling limitations, goes to the issue of consistency or credibility and is discussed below.

With respect to secondary adrenal insufficiency or Addison's,[1] Plaintiff argues that the ALJ misstated and/or was overly critical of Plaintiff's reports. Plaintiff again relies upon her self-referral to the Cleveland Clinic and further referral to endocrinology as support for finding the condition to be "severe," which is not persuasive for the reasons discussed. However, Plaintiff also complains that the ALJ misrepresented the record

---

[1] Plaintiff asserts the conditions are the same, since primary adrenal insufficiency is often referred to as Addison's disease.

when she stated "there is only one note of 'adrenal insufficiency' in the record, and that was still based on the claimant's subjective reports, where her objective blood testing was normal." (Tr. 66, citing Tr. 771). Plaintiff points to follow-up consulting records from Dr. Suman Jana dated in November 2014, March 2015, and June 2016, all of which contain references to "adrenal insufficiency." (*See* Tr. 593-595, 771, 884-890). Plaintiff also offered email correspondence in which Dr. Jana refers to adrenal insufficiency. (Tr. 26, 39-42). Plaintiff is correct that the records contain additional references, although it is not entirely clear whether those references relate to an earlier diagnostic test result, Plaintiff's subjective reports, or additional objective test results. Still, at least one later lab test result relating to adrenal insufficiency appears in the record. (Tr. 899, dated 1/30/15).

By contrast, the ALJ's statement that Plaintiff "was never told she has Addison's disease" is substantially supported. (Tr. 65, 889). The record reflects a hypothesis that she had developed adrenal insufficiency secondary to her previously prescribed steroid use, and that Plaintiff "worried" that she was developing Addison's disease. (Tr. 773; *see also* Tr. 65-66, 771, 889). Plaintiff had not been prescribed steroids for adrenal insufficiency,[2] but instead for complaints of "extreme fatigue and nausea." (Tr. 65, 889). The ALJ also accurately noted only one slightly elevated thyroid test (TSH), with other testing results demonstrated to be normal. (Tr. 65-66, 771, 838, 905).

The undersigned agrees that the ALJ's statement that the record contains only one reference to "adrenal insufficiency" reflects a factual error, but disagrees that the error requires remand. Even if the ALJ had more accurately articulated the number of

---

[2] According to the National Institute of Health, steroids are frequently prescribed to treat adrenal insufficiency and Addison's Disease. *See* https://www.niddk.nih.gov/health-information/endocrine-diseases/adrenal-insufficiency-addisons-disease/treatment (accessed on June 20, 2019).

references to adrenal insufficiency, no physician offered any opinion that Plaintiff's alleged adrenal insufficiency would cause any type of functional limitations beyond what the ALJ assessed, nor does the Plaintiff herself explain what additional limitations the ALJ should have determined based on that diagnosis. In addition, the ALJ here proceeded through all the sequential steps, despite the asserted Step 2 error. *See generally Pompa.*, 73 Fed. Appx. at 803; *Maziarz v. Sec'y of HHS*, 837 F.2d at 244.

## 2. The Assessment of Subjective Symptoms

Plaintiff's second assertion of error challenges the ALJ's assessment of her credibility. The ALJ made an adverse assessment of Plaintiff's subjective complaints, stating that although her "medically determinable impairments" could produce some of her reported symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 70).

The ALJ's assessment, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

14

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p is the elimination of the word "credibility" and clarifying that the focus of the ALJ's evaluation should be on the "consistency" of subjective complaints with the record as a whole. The elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former

SSR 96-7p uses the catchphrase "credibility determination."   Nevertheless, the essence of the regulatory framework remains unchanged.  Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions.  *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, it is clear that a reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff.  Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).   Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Plaintiff's argument that the ALJ's adverse determination goes "against the weight of the evidence" implies the existence of a preponderance evidentiary standard.  (Doc. 8 at 10).   However, "substantial evidence" is a more modest standard, consistently described as "more than a scintilla of evidence but less than a preponderance." *Besaw v. Sec'y of HHS*, 966 F.2d 1028, 1030 (6th Cir. 1992) (internal quotation and citation omitted); *see also Trammell v. Com'r*, 2015 WL 1020211 at *6 (S.D. Ohio March 9, 2015)

(reiterating the definition of substantial evidence and a court's duty to affirm even if substantial evidence supports a different decision, since the standard presupposes a "zone of choice.").

Here, the record provides ample support for the ALJ's finding that the Plaintiff's complaints of debilitating pain were not consistent with the record. (Tr. 63-72). *See Walters*, 127 F.3d at 532 ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). The ALJ referenced numerous clinical examination records and objective tests that failed to support Plaintiff's subjective complaints. (Tr. 70, 902). The ALJ pointed out that at the exams between her alleged onset date and date last insured, Plaintiff consistently exhibited normal gait, normal station, normal range of motion, and normal strength. (Tr. 70, 474, 512, 597, 768, 826, 902, 921, 940). Plaintiff also was noted to have no joint swelling (Tr. 70, 474, 588-589, 593, 771, 773, 901-902, 919, 921, 939-940); *see also generally, Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) (finding the absence of significant neurological deficits and atrophy to be substantial evidence supporting a non-disability determination).

In support of remand, Plaintiff points to a statement that Plaintiff reported only "mild" pain without radiating pain, and that she had "improved nicely with methotrexate and has no rheumatologic-associated symptoms." (Tr. 70). Plaintiff makes much of the fact that one record cited by the ALJ, dated April 16, 2016, reflects that Dr. Smith found "no <u>new</u> rheumatologic-associated symptoms." (Tr. 900-901, emphasis added). However, any minor misstatement is immaterial in relation to the record as a whole, which substantially supports the ALJ's conclusion that Plaintiff's pain was not disabling. In fact,

the cited record confirms both Plaintiff's significant improvement (as noted by the ALJ), and a report of only "mild" pain which was alleviated with rest and medication.

Plaintiff's complaints of disabling functional impairment from mental illness also were contradicted by the record. Despite her reports of anxiety or depression, Plaintiff's mental functioning was mostly normal, with consistently good memory, good concentration, good focus, and good fund of knowledge. (Tr. 71, 649, 651, 657, 658, 660, 662, 664, 725, 727, 731, 734, 740, 902, 921, 940, 955, 957, 959, 961, 963).

The ALJ appropriately discussed Plaintiff's subjective testimony concerning her symptoms, medications and side effects, as well as her treatment history. (Tr. 63-72). The record contains numerous inconsistencies. For example, despite testifying to extreme and debilitating medication side effects, (Tr. 106-107), she consistently denied such side effects in 2016. (*See, e.g.*, Tr. 844, 847, 850, 904). Despite testimony that she quit work due to headaches, she was treated conservatively for headaches, and advised to increase her hydration, decrease caffeine, and to increase exercise. (Tr. 70, 904). With hydration, she had "excellent relief" and her headaches were "much improved." (Tr. 70, 778). The ALJ also was permitted to consider Plaintiff's failure to comply with medical advice, such as failing to try aquatic exercises and altering her medication use, including the avoidance of her overuse of narcotics (Tr. 70, 904, 906, 907, 908, 919, 920, 937, 939). Medical records provide substantial support for these findings.

Plaintiff complains that the ALJ should have credited her explanation that she did not complete a pain management program due to cost, and not because of her marijuana use. (*See* Tr. 587). While it is true that the cited record attributes her lack of participation to cost, other records support the ALJ's conclusion that her continuing marijuana use was a factor. (Tr. 70, 553, 555, 585, 590). Although Plaintiff "hop[ed] to wean off of pain

18

medication on her own," medical records indicate she did not, despite her stated intention. (Tr. 70, 550, 553, 555, 907). Additionally, assuming the cost of the Cleveland program was prohibitive, there is no evidence that she complied with her physician's recommendation to check with her psychiatrist for a local structured program. *See* 20 C.F.R. §404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.").

The ALJ also did not err in considering Plaintiff's frequent reports to medical providers that stated she had been diagnosed with Lupus, Addison's disease, POTS, or other ailments with which she had not been formally diagnosed.[3] (Tr. 65, 583, 770, 815, 904) (Lupus); Tr. 65, 771, 773, 889 (Addison's disease); Tr. 228 (subjective report that her "POTS has gotten much worse"; *see also* Tr. 66, 583)). Substantial evidence supports the ALJ's inference that if Plaintiff were willing to stretch the truth about her diagnoses, she might also be exaggerating the intensity of her pain complaints. So long as substantial evidence exists to support the inference drawn by the ALJ, a court will not set aside that inference even if the court would have drawn a different inference. *Grundy v. Mining Co. v. Flynn*, 353 F.3d 467, 484 (6th Cir. 2003).

The ALJ also considered Plaintiff's abilities to engage in certain daily activities, including her ability to maintain normal hygiene, drive a car, access health care, read articles about diseases, visit with family, access social media on her phone, and interact with others. (Tr. 68). Plaintiff also testified she does her own laundry and does grocery shopping at Aldi. (Tr. 99). She goes out "a few times a week," mainly driving to a nearby

---

[3] Plaintiff testified before the ALJ to having Sjorgern's syndrome, another autoimmune disease. (Tr. 101, 105). However, there does not appear to be any support for that diagnosis in the record, and Plaintiff does not argue before this Court that it is among her severe impairments.

coffee shop. (Tr. 88). She testified she traveled to Florida to visit her parents in 2015, but got sick with bronchitis while she was there. (Tr. 102). An ALJ may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990).

While the ability to perform limited daily activities, by itself, does not equate to the ability to perform full-time work, the ALJ did not rely solely on daily activities but cited numerous inconsistencies in the record, indicating appropriate factors under SSR 16-7p. At one point, Plaintiff reported to her physician she was "walking a 5K with her dog daily" and that she was able to do that despite some pain. (Tr. 70, 906, 919). On June 24, 2016, she reported she was exercising 5 days per week, 60 minutes per day. (Tr. 884). At the March 2017 hearing, Plaintiff testified, contrary to her earlier reports, that her attempt to walk her dog proved to be "extremely painful," causing her to "pass out for hours afterwards, so that lasted for about two weeks…." (Tr. 103). The ALJ was permitted to consider these and other inconsistencies between Plaintiff's hearing testimony and the record as a whole.

Finally, Plaintiff seeks remand on grounds that the ALJ did not sufficiently explain the reasons for discounting the one-page written statements provided by her mother and her mother-in-law. (Tr. 322-323). The ALJ acknowledged the third-party statements but declined to credit them for the following reasons:

> The claimant's mother…did not cite to specific dates and largely just talked about her daughter in general terms… She lives in Florida and apparently does not see the claimant often but the claimant testified that she spoke to her daily. While clearly having empathy for her daughter, there is nothing specific here on which to find greater limitation than discussed above based on the objective evidence of record, including medical exam and mental observations of trained professionals. The same is essentially true for the statement of claimant's mother-in-law…. These are just some general

subjective observations in the context of stated medical impairments for which she is not qualified to be interpreting.  While understandably meant to give emotional support to the claimant and her efforts in obtaining disability, these statements are too general to provide a basis for finding the disabled or more limited than stated above.  Little weight is given.

(Tr. 71-72, citing Tr. 322-323).

The Defendant allows "that the ALJ used a poor choice of words" in describing the letters as "too general." (Doc. 10 at 19). However, the undersigned finds no mischaracterization of either letter.[4]  If a reviewing court were to disagree and find any error in the ALJ's analysis of the two brief undated letters, the undersigned alternatively would find any error to be harmless, as the statements mostly reflect subjective complaints including references to non-severe and unconfirmed diagnoses.  The same substantial evidence that supports the ALJ's failure to fully credit Plaintiff's subjectively reported symptoms supports the ALJ's decision not to fully credit the "disability" opinions of the two lay witnesses.

### III.  Conclusion and Recommendation

Because the ALJ's decision is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED**, and that this case be **CLOSED**.


_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

---

[4] The ALJ's reference to Plaintiff's mother living in Florida and seeing her daughter infrequently is a valid basis for discounting her statements, notwithstanding Plaintiff's testimony that the two were in frequent telephone contact.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIFFANY BUCHANAN,                                    Case No. 1:18-cv-466

        Plaintiff,                                    Dlott, J.
                                                     Bowman, M.J.
    v.


COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).